## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

JENNIFER LEONARD                                                    CIVIL ACTION

VERSUS                                                              NO. 19-827-BAJ-RLB

IMT INSURANCE COMPANY, ET AL.

## ORDER

Before the Court is a Motion to Quash and/or for Protective Order filed by non-party Joseph W. Turnipseed, M.D. ("Dr. Turnipseed") and The Spine Diagnostic & Pain Treatment Center ("Spine Diagnostic") on February 24, 2021. (R. Doc. 16). The motion is opposed. (R. Doc. 18).

**I.    Background**

On October 29, 2019, Jennifer Leonard ("Plaintiff") initiated this personal injury action in state court to obtain damages incurred in an automobile accident, naming as defendants Tyler Martin and Wadena Insurance Company[1] (collectively, "Defendants"). (R. Doc. 1-2). Mr. Martin removed the action, asserting the Court has diversity jurisdiction under 28 U.S.C. § 1331. (R. Doc. 1).

Dr. Turnipseed is an anesthesiologist and pain management specialist who practices at Spine Diagnostic and is a treating physician of Plaintiff with respect to her alleged neck and back pain in this action. The instant motion concerns a subpoena that Defendants served on Dr. Turnipseed and Spine Diagnostic. The subpoena seeks the production of all records, charts, bills and statements for services rendered to any patients in the past ten years whom Dr. Turnipseed

---

[1] Plaintiff identified IMT Insurance Company in the Petition. The removal states that the Petition erroneously identified Wadena Insurance Company as IMT Insurance Company. (R. Doc. 1 at 3).

recommended for cervical neurotomies for the periods of ten years, twenty years, or life. (R. Doc. 16-2). The subpoena specifically seeks the redaction of all protected health information.

Dr. Turnipseed and Spine Diagnostic seek an order quashing the subpoena on the bases that it is overly broad, production would be unduly burdensome, and the information sought is personal, confidential, privileged, irrelevant, and not proportional to the needs of this case. (R. Doc. 16-1 at 8-13). Dr. Turnipseed submits an affidavit representing that the Spine Diagnostic system of filing and maintaining patient charts does not identify recommended medical procedures and that significant costs would be incurred to collect and compile such information. (R. Doc. 16-4). The affidavit suggests, but does not specifically state, that Dr. Turnipseed and his staff would have to spend one hour to review and redact each of 7,000 relevant patient files at a cost of $1,000 per hour (i.e., approximately, $7 million) to collect and produce the information sought. (R. Doc. 16-4 at 2-3).

In opposition, Defendants argue that the bulk of the expenses in Plaintiff's life care plan presented by her economic expert includes 5-6 years of cervical neurotomies at an estimated total cost of $123,390. (R. Doc. 18 at 2). Defendants represent that they have issued a second, narrower subpoena limiting the information sought to patients in the past 5 years for whom Dr. Turnipseed recommended and/or advised the need for future cervical neurotomies for periods of 5-6 years and any related bills or statements. (R. Doc. 18 at 3).[2] Defendants argue that the information sought (as narrowed by the second subpoena) is relevant, not protected by HIPPA or the physician-patient privilege, and is proportional to the needs of the case. (R. Doc. 18 at 5-13).

---

[2] Defendants do not submit a copy of this second subpoena.

2

**II.     Law and Analysis**

    **A.     Legal Standards**

"Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). The court must limit the frequency or extent of discovery if it determines that: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C).

Rule 45 governs the issuance of subpoenas to obtain discovery from non-parties. The party issuing the subpoena "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena," and "[t]he court for the district where compliance is required must enforce this duty and impose an appropriate sanction. . . ." Fed. R. Civ. P. 45(d)(1). Similarly, a motion to quash or limit a subpoena is to be considered by the court of compliance. *See* Fed. R. Civ. P. 45(d)(3). As the instant subpoena seeks compliance in New Orleans, Louisiana, this is not the court for the district where compliance is required.

Nevertheless, Rule 26(c) allows the court where the action is pending to issue a protective order after a showing of good cause "to protect a party or person from annoyance,

3

embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Rule 26(c)'s "good cause" requirement indicates that the party seeking a protective order has the burden "to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998) (quoting *United States v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978)).

  **B.**  **Analysis**

  Having reviewed the subpoena at issue, the Court finds the categories sought to be overly broad. The subpoena seeks the entirety of any medical records, charts, bill, and statements for services rendered for any patients of Dr. Turnipseed whom he has recommended cervical neurotomies for certain periods of time (10 years, 20 years, and lifetime) over the past ten years of his practice. (R. Doc. 16-2 at 2). While the subpoena states that the information is sought with all protected health information redacted, Defendants have not demonstrated that the <u>entirety</u> of the patient records fall within the scope of discovery. Furthermore, given that Dr. Turnipseed recommends that the Plaintiff receive cervical neurotomies for a period of 5-6 years, the time periods sought in the subpoena are facially overbroad. Defendants acknowledge this overbreadth by their decision to issue a subsequent subpoena narrowing the time period of information sought. (*See* R. Doc. 18-1).

  The Court finds, however, that the <u>number</u> of patients that Dr. Turnipseed has recommended or opined on the necessity for cervical neurotomies for a period of 5-6 years, and the <u>number</u> of known patients who actually underwent the procedures as recommended or opined, falls within the scope of discovery. The underlying purpose of the subpoena is to obtain information to challenge Dr. Turnipseed's credibility by potentially showing that he regularly recommends or opines that repeated future cervical neurotomies are needed, but few, if any, of

these patients actually undergo the recommended treatment. (R. Doc. 18 at 6-7). This discovery could show whether Dr. Turnipseed's opinions as to future medical treatment, presumably based in part on his patient's subjective complaints of pain, were actually followed by his patients. The Court will limit the timeframe of such recommendations / opinions to those made in the last five years.

As other courts have recognized, this information is relevant for the purpose of challenging Dr. Turnipseed's credibility, which ultimately concerns the scope of recoverable damages in this action. *See Fusco v. Levine, et al.*, No. 16-cv-1454-SMH-KLH, ECF No. 188, at *10-11 (W.D. La. Feb. 21, 2019) ("The court agrees that the number of procedures undergone by other patients is not, in and of itself, directly relevant to plaintiff's need for future procedures. However, if, over the past ten years, very few or no patients undergo multiple procedures, then, absent further explication regarding the uniqueness of plaintiff's situation, this may tend to show that plaintiff also will not undergo these additional procedures."); *see also Chauppette v. Northland Ins. Co.*, No. 08-4193, 2009 WL 3447291, at *1 (E.D. La. Oct. 21, 2009) ("The motion is denied insofar as it seeks a blanket order limiting the subpoena to areas involving the plaintiff, her medical bills and her medical treatment of [her treating physician]. Such a prohibition sweeps too broadly and would unduly restrict appropriate discovery relevant to [her treating physician's] credibility.").

Furthermore, given the prospective cost of the recommended future treatment, the information sought is proportional to the needs of this case. The Court is not convinced that Dr. Turnipseed or Spine Diagnostic will face any **undue** burden in identifying the number of patients Dr. Turnipseed has recommended in the past 5 years for cervical neurotomies for a period of 5-6 years, and the number of such patients who actually underwent the procedures. Dr. Turnipseed's affidavit provides that the medical records have been scanned in electronic form.

5

The Court will, however, require Dr. Turnipseed's counsel and defendant's counsel to confer regarding a rolling production, perhaps beginning with a subset of records or timeframe and then consider whether further review and production is warranted. The parties shall consider whether a shorter time period (only look at recommendations from 2016) or whether categories of patients can be identified by another manner (such as those where Dr. Turnipseed provided a report, deposition or trial testimony in actual litigation)[3] and then those files can be reviewed for cervical neurotomies and future recommended treatment. To the extent such records are now electronic, the parties may consider whether electronic searches regarding cervical neurotomies (and/or related medical diagnostic codes) could be less burdensome.

The Court will also require the attorneys to confer regarding whether the production of this information is best made through an affidavit or through oral testimony.

The Court will not require Dr. Turnipseed to produce any underlying documents regarding his other medical patients at this time. Given that the court will only require the production of the number of patients at this time there is no issue regarding the disclosure of protective health information or otherwise privileged physician-patient communications. The relevant provisions of the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") and the Louisiana physician-patient privilege do not prevent the disclosure of this factual information absent any identifying personal information. *See In re Zyprexa Liability Litigation*, 254 F.R.D. 50, 55 (E.D.N.Y. 2008) ("Federal regulations . . . provide that '[h]ealth information that does not identify an individual and with respect to which there is no reasonable

---

[3] Dr. Turnipseed has, for example, testified regarding future medical expenses in this Court. *See Berry v. Roberson*, 13-145-BAJ-RLB, 2015 WL 1935884, *3, 12 (M.D. La. April 28, 2015) (testimony that future medical treatment will involve repeat rhizotomies because the nerves regenerate, and that his clinical practice goes out "to ten years and that he would continue to repeat rhizotomies for decades if they worked.") Presumably this testimony was not simply anecdotal and based in part on actual treatment he has provided to prior patients. Although the *Berry* case may not have involved cervical neurotomies, an initial review of litigation related cases may be a good starting place because it is likely that cases in litigation may often call upon Dr. Turnipseed to consider whether long term treatment will be likely.

6

basis to believe that the information can be used to identify an individual is not individually identifiable health information.'" (quoting 45 C.F.R. 164.514(a)); *Jackson v. Baptist Ret. Ctr. of Arcadia,* 933 So.2d 131, 131 (La. 2006) (permitting discovery of non-party medical records subject to redaction of identifying information); *Speer v. Whitecloud,* 744 So. 2d 1283, 1284 (La. 1999) ("Once any personal information which would identify the patients is redacted from the records, the requested discovery does not invade the physician patient privilege, and the need for [notice to the patient and a contradictory hearing] is eliminated.").

To the extent deemed necessary, the parties may move for the entry of a more comprehensive protective order governing the exchange of confidential information.

### III. Conclusion

Based on the foregoing,

**IT IS ORDERED** that the Motion to Quash and/or for Protective Order is **GRANTED IN PART and DENIED IN PART**. Dr. Turnipseed and Spine Diagnostic must produce to Defendants the <u>number</u> of patients in the past 5 years that he has recommended for cervical neurotomies for a period of 5-6 years, and the <u>number</u> of known patients who actually underwent the procedures, within **30 days** after meeting and conferring as set forth above, or as otherwise agreed upon by the parties, by either providing oral testimony at a deposition or a written affidavit.

**IT IS FURTHER ORDERED** that the parties shall bear their own costs.

Signed in Baton Rouge, Louisiana, on March 16, 2021.

_____
RICHARD L. BOURGEOIS, JR.
UNITED STATES MAGISTRATE JUDGE